Versión para imprimir



EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Zoraida Reyes Sánchez | |
|---|---|
| Recurrida | |
| v. | Certiorari |
| | 2013 TSPR 108 |
| Eaton Electrical H/N/C Eaton Electrical Las Piedras; Fulana de Tal | 189 DPR ____ |
| Peticionarios | |

Número del Caso: CC-2011-191

Fecha: 7 de octubre de 2013

Tribunal de Apelaciones:

        Región Judicial de Caguas

Abogados de la Parte Peticionaria:

        Lcdo. Russell del Toro
        Lcda. Myriam Matos Bermúdez

Abogado de la Parte Recurrida:

        Lcdo. Alejandro Torres Rivera

Materia: Derecho Laboral – Art. 3 Ley 80-1976: Orden de retención de empleados por antigüedad en la empresa

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Zoraida Reyes Sánchez<br><br>Recurrida<br><br>v.<br><br>Eaton Electrical H/N/C Eaton Electrical Las Piedras; Fulana de Tal<br><br>Peticionarios | | CC-2011-0191 |

Opinión del Tribunal emitida por la Juez Asociada señora Rodríguez Rodríguez

San Juan, Puerto Rico, a 7 de octubre de 2013

Este caso nos brinda la oportunidad de expresarnos en torno al orden de retención de empleados por antigüedad que establece el Artículo 3 de la Ley Núm. 80 de 30 de mayo de 1976, 29 L.P.R.A. 185a-185m, conocida como la Ley de Indemnización por Despido Injustificado ("Ley Núm. 80"). Particularmente, debemos determinar si la antigüedad de un empleado debe computarse a base del tiempo que éste ha trabajado en la clasificación ocupacional en que se desempeña o si este cómputo debe comprender la totalidad del tiempo que el empleado ha trabajado en la empresa. Asimismo, tenemos la oportunidad de expresarnos sobre el orden de retención de empleados por antigüedad que deben realizar aquellas empresas que tienen más de un establecimiento.

Pasemos, entonces, a resumir los hechos que sirven de trasfondo a la controversia ante nuestra consideración.

I

Eaton Electrical de Puerto Rico, Inc. ("Eaton") es una corporación que realiza negocios en Puerto Rico. El 16 de febrero de 2001, la señora Zoraida Reyes Sánchez, quien posee un bachillerato en Ingeniería Industrial, comenzó a trabajar como Gerente de Calidad en la planta de Coamo de Eaton, haciendo negocios como Cutler-Hammer. [1] Posteriormente, fue ascendida al puesto de Gerente de Ingeniería y Calidad. En marzo de 2006, Eaton, a través del programa "Eaton Jobs", [2] publicó electrónicamente un anuncio de vacante para el puesto de Gerente de Servicios Técnicos en la planta de Las Piedras.

En respuesta al referido anuncio, la señora Reyes Sánchez solicitó y fue seleccionada para ocupar el puesto vacante. Al ser nombrada Gerente de Servicios Técnicos, ésta pasó a pertenecer al grupo ocupacional de "Staff" ("grupo de *Staff*") en la planta de Las Piedras. El grupo de *Staff* estaba compuesto por empleados asalariados que se reportaban directamente ante el Gerente General de la planta de Las Piedras. En abril de 2008, Eaton anunció que, debido a una disminución en la demanda del producto, tendrían que tomar medidas de reducción de personal. A tales fines, Eaton inició un programa de separación

---

[1] Para efectos de la controversia ante nuestra consideración, no está en controversia que Eaton y Cutler-Hammer son una misma empresa.

[2] "Eaton Jobs" es un programa de la empresa que consiste en publicar oportunidades de empleo para sus empleados en las distintas plantas de Eaton a nivel internacional. Conforme a este programa, el empleado interesado solicita y es evaluado por la planta que pretende llenar la plaza o vacante.

voluntaria en la planta de Las Piedras. La empresa, sin embargo, excluyó del programa de separación voluntaria a los empleados del grupo de *Staff* que laboraban en el proyecto *Lightspeed*, proyecto en el cual trabajaba la señora Reyes Sánchez.

En mayo de 2008, mientras el programa de separación voluntaria estaba en vigor, el señor Eddy Del Carmen Tave, quien había trabajado para Eaton desde el 24 de mayo de 1994,[3] fue ascendido al puesto de Gerente de *Lightspeed*.[4] Debido al ascenso, el señor Del Carmen Tave también pasó a formar parte del grupo de *Staff* en la planta de Las Piedras. Concluido el programa de separación voluntaria, la señora Linda Jane Littke, Gerente de Recursos Humanos de Eaton de Las Piedras, anunció al grupo de *Staff* que la cantidad de personas acogidas al programa de separación voluntaria no fue suficiente y que, por ende, la empresa procedería a cesantear empleados de forma involuntaria. Consiguientemente, el 27 de junio de 2008 se le notificó a la señora Reyes Sánchez que sería cesanteada y que su posición sería eliminada por razón de problemas económicos de la empresa.[5] La fecha efectiva del despido fue el 15 de julio de 2008. En cambio, el señor Del Carmen Tave permaneció trabajando en la planta de Eaton de Las Piedras.

---

[3] Las partes estipularon la fecha de comienzo del señor Del Carmen Tave en la empresa.

[4] Con anterioridad al ascenso, el señor Del Carmen Tave había trabajado en varias plantas de la empresa, ejerciendo funciones en distintas clasificaciones ocupacionales.

[5] Además de la señora Reyes Sánchez, en la misma fecha fueron cesanteados tres (3) empleados: Rolando Cartagena, Cándido Rivera y Roselyn Aponte.

A raíz de estos hechos, el 23 de enero de 2009, la señora Reyes Sánchez presentó una acción por despido injustificado ante el Tribunal de Primera Instancia, Sala Superior de Caguas.[6]  En su reclamación, la señora Reyes Sánchez señaló que el señor Del Carmen Tave era el empleado de menor antigüedad en la clasificación ocupacional del grupo de *Staff* y que, por ende, el despido de ésta fue injustificado.  Adujo, además, que al calcular la antigüedad, Eaton debió tomar en consideración el tiempo que los empleados habían trabajado dentro del grupo de *Staff*, y no la totalidad del tiempo que éstos habían trabajado en la empresa.  A su vez, planteó que conforme al inciso (b) del Artículo 3 de la Ley Núm. 80, Eaton debió calcular la antigüedad de los empleados en el grupo de *Staff* en todas las plantas de la empresa por razón de que era práctica usual y regular de Eaton trasladar empleados entre sus plantas y que las distintas plantas operaban de forma sustancialmente integrada en cuanto a los aspectos de personal.[7]

Luego de la presentación del Informe de Conferencia Preliminar Entre Abogados, el 1 de octubre de 2009 Eaton

---

[6] La señora Reyes Sánchez presentó una querella bajo el procedimiento sumario de la Ley Núm. 2 de 17 de octubre de 1961, 32 L.P.R.A. sec. 3118.

[7] En la teoría expresada por la señora Reyes Sánchez en el Informe con Antelación a Juicio entre Abogados, ésta narró y alegó una serie de percances con el señor Rick Rattliff, Gerente General de Eaton, y con la señora Linda Jane Littke, Gerente de Recursos Humanos. No obstante, la causa de acción de la querellante se presentó al amparo de la Ley Núm. 80 y se fundamenta en que su despido fue injustificado por razón de que ella no era la persona con menor antigüedad en la empresa.

presentó una moción para solicitar sentencia sumaria. En esencia, Eaton planteó que el despido fue justificado toda vez que hubo una reorganización de la empresa y, en cumplimiento con el orden de retención de empleados por antigüedad, la señora Reyes Sánchez era la empleada de menor antigüedad en su clasificación ocupacional en la planta de Eaton de Las Piedras.[8] Oportunamente, la señora Reyes Sánchez presentó un escrito en oposición a la moción de sentencia sumaria en la que alegó que el señor Del Carmen Tave era el empleado de menor antigüedad, pues él era la persona que menos tiempo llevaba trabajando en el grupo de *Staff* en la planta de Las Piedras. A su vez, reiteró que Eaton tenía la práctica usual y regular de trasladar a sus empleados de una planta a otra y que, por ende, Eaton debió establecer un orden de retención de empleados por antigüedad a base de todas las plantas de la empresa. Por tal razón, arguyó que no procedía dictar sentencia sumaria a favor de Eaton toda vez que existían hechos esenciales en controversia.

El Tribunal de Primera Instancia declaró sin lugar la moción de sentencia sumaria. Sin embargo, en reconsideración dictó sentencia sumaria a favor de la parte querellante, declaró ha lugar la causa de acción de despido injustificado y ordenó el pago de la mesada. El tribunal fundamentó su determinación en que al calcular la

---

[8] Cabe señalar que, en la controversia ante nuestra consideración, no está en disputa la identidad de la clasificación ocupacional que ocupaban la señora Reyes Sánchez y el señor Del Carmen Tave.

antigüedad de un empleado para propósitos de establecer el orden de retención por antigüedad, sólo debe tomarse en consideración el tiempo que el empleado ha trabajado en la clasificación ocupacional en que se desempeña al momento de la reducción de personal, y no la totalidad del tiempo que éste ha trabajado en la empresa. Sobre la base de esta interpretación de derecho, concluyó que la señora Reyes Sánchez había sido despedida injustificadamente por ésta llevar más tiempo laborando en el grupo de *Staff* que el señor Del Carmen Tave, a pesar de que este último llevaba más tiempo trabajando en la empresa. Insatisfecho, Eaton presentó una oportuna apelación ante el Tribunal de Apelaciones, el cual confirmó la sentencia del foro primario.

Inconforme con tal determinación, Eaton recurrió ante este Tribunal y alegó, en lo pertinente, que erró el foro apelativo al concluir que para determinar la antigüedad de un empleado sólo se calculará el tiempo que el empleado haya trabajado en la clasificación ocupacional en que se desempeña al momento de la reducción de personal, excluyendo el tiempo que el empleado haya trabajado en otras clasificaciones ocupacionales en la empresa. Además, adujo que procedía dictar sentencia sumaria a su favor al no haber controversias de hechos esenciales y proceder esta como cuestión de derecho.

Planteada así la controversia, el 17 de junio de 2011 expedimos el auto solicitado. Con el beneficio de la comparecencia de las partes, procedemos a resolver.

## II

La sentencia sumaria es un mecanismo procesal cuyo propósito es proveer una solución justa, rápida y económica de los litigios. Regla 36.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III R. 36.1; *Quest Diagnostics v. Mun. San Juan*, 175 D.P.R. 994 (2009). Es decir, el mecanismo de sentencia sumaria permite al tribunal dictar sentencia sin necesidad de celebrar una vista evidenciaria o juicio, cuando de los documentos no controvertidos que se acompañan con la solicitud —y de la totalidad de los autos— surge que no existe controversia sobre los hechos esenciales o materiales, y sólo resta aplicar el derecho. *Partido Acción Civil v. E.L.A.*, 150 D.P.R. 359 (2000).

El tribunal no deberá dictar sentencia sumaria cuando: (1) existan hechos esenciales controvertidos; (2) haya alegaciones afirmativas en la demanda que no han sido refutadas; (3) surja de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho esencial o material; o (4) como cuestión de derecho no procede. *González v. Multiventas*, 165 D.P.R. 873, 889 (2005); *PFZ Properties, Inc. v. General Accident Insurance Co.*, 136 D.P.R. 881, 913-914 (1994).

Para efectos de la sentencia sumaria, un hecho esencial o material es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. *Ramos Pérez v. Univisión*, 178 D.P.R. 200 (2010). Queda en la parte promovente acreditar que no existe controversia sobre los hechos esenciales del litigio y

procedería, como cuestión de derecho, dictar sentencia sumaria. *Id.* en las págs. 217-218.

Para evitar que se dicte sentencia sumaria, la parte que se opone a la solicitud está obligada a exponer en detalle y especificidad los hechos esenciales en controversia que ameriten que el pleito deba dirimirse mediante juicio en los méritos; no puede descansar en las aseveraciones o negaciones contenidas en sus alegaciones. 32 L.P.R.A. Ap. V., R. 36.3(c). A su vez, cuando la solicitud de sentencia sumaria se sustente en declaraciones juradas u otra prueba, la parte promovida no puede descansar en meras alegaciones y debe presentar evidencia sustancial sobre los hechos esenciales que están en controversia. *Ramos Pérez,* 178 D.P.R. en la pág. 215.

En caso de que las partes hayan realizado un adecuado y apropiado descubrimiento de prueba, procederá dictar sentencia sumaria cuando: (1) el provente demuestre que es innecesaria la vista en su fondo; (2) el promovido no ha presentado evidencia suficiente para probar un elemento esencial de su caso; y (3) como cuestión de derecho procede la desestimación de la acción. *Id.* en las págs. 217-218; *Véase además Medina v. M.S. & D. Química P.R., Inc.,* 135 D.P.R. 716, 732-733 (1994).

Por su parte, el tribunal apelativo, como foro revisor, utilizará los mismos criterios que el foro primario al determinar si procede la solicitud de sentencia sumaria. *Vera v. Dr. Bravo,* 161 D.P.R. 308, 334 (2004). Sin embargo, el foro revisor está limitado a considerar

aquellos documentos presentados ante el foro primario y determinar si existe o no una controversia de hechos esenciales, y si se aplicó el derecho correctamente. *Vera*, 161 D.P.R. en la pág. 335. El foro revisor no dirime credibilidad; debe presumir ciertos todos los hechos no controvertidos que surjan del expediente del caso. *González*, 165 D.P.R. en la pág. 889.

## III

### A

La Ley Núm. 80 tiene dos propósitos principales. Por un lado, pretende, mediante sanción, desalentar la práctica de los patronos de despedir a sus empleados sin que medie justa causa. Por otro lado, tiene un fin reparador al proveerle a los empleados remedios consustanciales a los daños causados por despidos injustificados. *Beauchamp v. Holsum Bakers of P.R.*, 116 D.P.R. 522, 526 (1985); *véase además* Exposición de Motivos Ley Núm. 80, 29 L.P.R.A. sec. 185a, 1976 Leyes de Puerto Rico 268. El Artículo 11 de la Ley Núm. 80 establece que es al patrono a quien le corresponde rebatir la presunción de que el despido se efectuó sin mediar justa causa.[9] 29 L.P.R.A. sec. 185k. Esto es, el patrono viene obligado a probar que el despido

---

[9] Según establecimos *en Rivera Figueroa v. The Fuller Brush Co.*, 180 D.P.R. 894 (2011), el Art. 11 presupone que el empleado haya demostrado que: (1) fue empleado de un comercio, industria u otro negocio; (2) su contrato era por tiempo indeterminado; (3) recibía remuneración por su trabajo; y (4) fue despedido de su puesto mediante un despido directo o en su modalidad constructiva o tácita.

fue justificado para quedar eximido del pago de la mesada. 29 L.P.R.A. sec. 185k.

Aunque la Ley Núm. 80 no define qué es un despido injustificado, el Artículo 2 de la Ley establece una serie de situaciones bajo las cuales se entenderá que un despido fue justificado. 29 L.P.R.A. sec. 185b; *Véase Srio. del Trabajo v. GP Inds., Inc.,* 153 D.P.R. 223, 242-245 (2001). Éstas se dividen en dos áreas: las situaciones que son atribuibles al empleado y las que son atribuibles al patrono. La controversia que nos ocupa requiere que repasemos aquellas circunstancias que se consideran atribuibles al patrono, a saber:

Se entenderá por justa causa para el despido de un empleado de un establecimiento:

. . .

(d) Cierre total, temporero o parcial de las operaciones del establecimiento. Disponiéndose, que en aquellos casos en que la empresa posea más de una oficina, fábrica, sucursal o planta, el cierre total, temporero o parcial de las operaciones de cualquiera de estos establecimientos, constituirá justa causa para el despido a tenor con esta sección.
(e) Los cambios tecnológicos o de reorganización, así como los de estilo, diseño o naturaleza del producto que se produce o maneja por el establecimiento y los cambios en los servicios rendidos al público.
(f) Reducciones en empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido.[10]

_____

[10] Las atribuibles al empleado son las siguientes:
    (a) Que el obrero siga un patrón de conducta impropia o desordenada.
    (b) La actitud del empleado de no rendir su trabajo en forma eficiente o de hacerlo tardía y negligentemente o en violación de las normas de calidad del producto que se produce o maneja por el establecimiento.
    (c) Violación reiterada por el empleado de las reglas y reglamentos razonables establecidas para el funcionamiento del establecimiento siempre que copia

29 L.P.R.A. sec. 185b.

En los incisos señalados se describen situaciones que tienen que ver con actuaciones del patrono relacionadas a la administración de su negocio en el curso y operación diaria de las empresas y que son resultado, principalmente, de razones de índole económica. *Díaz Fontánez v. Wyndham Hotel Corp.*, 155 D.P.R. 364,376 (2001). Es decir, se plantean situaciones "que no son imputables al obrero pero son de tal naturaleza que su despido resulta prácticamente inevitable dentro de las normas usuales y ordinarias que imperan en el manejo de los negocios". Informe Conjunto, Comisiones de Trabajo y Derechos Civiles y Servicio Público, P. de la C. 1112, 23 de abril de 1975, pág. 3.

Por consiguiente, se considerará "justa causa para el despido aquella que tiene su origen, no en el libre arbitrio o capricho del patrono, sino aquella vinculada a la ordenada marcha y normal funcionamiento de la empresa en cuestión". *Díaz Fontánez*, 155 D.P.R. en la pág. 376. Ahora bien, en casos donde se despida empleados por razones atribuibles al patrono, éste tiene el deber de cumplir con el orden de retención preferente de empleados que establece el Artículo 3 de la Ley ("Artículo 3"), 29 L.P.R.A. sec. 185c. [11] Por lo tanto, aun cuando el patrono pueda

---

escrita de los mismos se haya suministrado oportunamente al empleado.
29 L.P.R.A. 185b.

[11] La Ley exceptúa al patrono de seguir el orden de retención de empleados por antigüedad en aquellos casos en que, al compararse a los trabajadores, haya una diferencia clara o inconcusa en la eficiencia y capacidad entre unos y

justificar la necesidad de realizar despidos amparándose en los incisos (d), (e) y (f) del Artículo 2 de la Ley Núm. 80, éste debe seguir el orden de retención de empleados que dispone el Artículo 3 de la Ley.  Al respecto, el Artículo 3 dispone lo siguiente:

En cualquier caso en que se despidiesen empleados por las razones indicadas en los incisos (d), (e) y (f) de la sec. 185b de este título, **el patrono estará obligado a retener con preferencia en el empleo a los empleados de más antigüedad siempre que subsistan puestos vacantes u ocupados por empleados de menos antigüedad en el empleo dentro de su clasificación ocupacional que puedan ser desempeñados por ellos.**
29 L.P.R.A. sec. 185c (énfasis nuestro).

Consecuentemente, en caso de despidos por razones atribuibles al patrono, éste deberá retener a aquellos empleados con más antigüedad en la clasificación ocupacional en la cual se dispone a efectuar los despidos, siempre y cuando subsistan puestos vacantes u ocupados por empleados con menos antigüedad.  De esta manera, el legislador aclaró que el orden de retención de empleados por antigüedad se efectuará a razón de la clasificación ocupacional de los empleados.  Así, proscribió que en las reducciones de personal tramitadas bajo las disposiciones de la Ley Núm. 80 se efectuaran desplazamientos de empleados entre diferentes clasificaciones ocupacionales ("bumping").[12]  Además, mediante el precepto antes citado,

---

otros. 29 L.P.R.A. sec. 185c. Tal excepción no está en controversia en este caso.
[12]   Esta aclaración, además, tuvo efecto de evitar que un empleado con más antigüedad pero no capacitado para ejercer una función ajena a su clasificación ocupacional, desplazara a empleados de menos antigüedad en otras clasificaciones ocupacionales. *Véase* Informe a la Cámara de

el legislador estableció el deber del patrono de retener con preferencia a aquellos empleados con más antigüedad en el empleo, dentro de la clasificación ocupacional objeto de los despidos.[13]

La Guía para la Interpretación y Aplicación de la Ley Núm. 80 ("Guía"), gestada en virtud del poder conferido al Secretario del Trabajo y Recursos Humanos de adoptar y promulgar la reglamentación necesaria para la administración de la Ley Núm. 80,[14] interpreta el Artículo 3 de la siguiente manera:

En caso de que surja la necesidad de despedir empleados dentro de alguna o algunas clasificaciones ocupacionales, el patrono estará obligado a retener con preferencia en tales clasificaciones, a los empleados de más antigüedad en la empresa. Esto siempre que subsistan puestos vacantes u ocupados por empleados de menos antigüedad en el empleo dentro de su clasificación ocupacional, que pueden ser desempeñados por éstos. A tales fines se considerará todo el tiempo trabajado continua e ininterrumpidamente para la empresa, independientemente de las clasificaciones

---

Representantes de la Comisión de Comercio e Industria, 26 de mayo de 1975; *véase además* Consulta del Procurador del Trabajo Núm. 12,179, Departamento del Trabajo y Recursos Humanos de Puerto Rico, 22 de febrero de 1983.

[13] La inobservancia por parte del patrono del requisito de establecer un orden de retención de empleados por antigüedad conlleva la imposición de responsabilidad por despido injustificado. Por tal razón, establecer el orden de retención de empleados por antigüedad "resulta ser una materia que debe ser objeto de ponderación cabal". Alberto Acevedo Colom, *Legislación Protectora del Trabajo Comentada* 155 (8va ed. 2005).

[14] Mediante la Ley Núm. 67 de 3 de julio de 1986, 29 L.P.R.A. sec. 185m, la Asamblea Legislativa enmendó la Ley Núm. 80 para autorizar al Secretario del Trabajo y Recursos Humanos ("Secretario") a adoptar y promulgar la reglamentación necesaria para la administración de la Ley Núm. 80. A tales fines, en el año 1979, el Secretario aprobó la "Guía para la Interpretación y Aplicación de la Ley Núm. 80 de 30 de mayo de 1976, según enmendada". El 21 de septiembre de 2000 el Departamento del Trabajo y Recursos Humanos publicó la "Guía revisada de la Ley Núm. 80 de 30 de mayo de 1976".

ocupacionales que se hayan desempeñado.

Departamento del Trabajo y Recursos Humanos del Estado Libre Asociado de Puerto Rico, Guía para la Interpretación y Aplicación de la Ley Núm. 80, pág. 39 (2000).

Específicamente, en lo concerniente a la controversia ante nuestra consideración, la Guía añade lo siguiente:

Para computar la antigüedad de un trabajador a los efectos de determinar su derecho a retención y reempleo preferente, debe considerarse todo el tiempo que éste ha trabajado para la empresa desde la última vez que fue reclutado sin limitarse al tiempo trabajado en el último puesto que ocupa.

Departamento del Trabajo y Recursos Humanos del Estado Libre Asociado de Puerto Rico, Guía para la Interpretación y Aplicación de la Ley Núm. 80, pág. 39 (2000).

Finalmente, para una mejor comprensión del Artículo 3, la Guía establece el siguiente ejemplo:

[U]n trabajador, denominado "A" que comienza a trabajar para la empresa como despachador y así trabaja por dos (2) años. De despachador pasa a vendedor donde trabaja por tres (3) años y luego es ascendido a gerente donde trabaja por cinco (5) años. En caso de que la empresa se vea en la necesidad de despedir uno o más gerentes, reteniendo a otros, "A" tiene una antigüedad de diez (10) años y en caso de que la empresa tenga un gerente, denominado "B", que lleva, digamos, ocho (8) años como gerente, pero sólo lleva nueve (9) años trabajando para la empresa, "A" tiene derecho a ser retenido preferentemente por sobre "B" a base del criterio de antigüedad.

Departamento del Trabajo y Recursos Humanos del Estado Libre Asociado de Puerto Rico, Guía para la Interpretación y Aplicación de la Ley Núm. 80, pág. 39.

Conforme a lo anterior, la antigüedad de un empleado se debe computar desde que éste comienza a trabajar para la empresa, independientemente del movimiento del empleado entre distintas clasificaciones ocupacionales en la

empresa.[15] A tales fines, la empresa deberá identificar el grupo de empleados en la clasificación ocupacional en donde operará una reducción de personal y dentro de ese grupo, calculará la antigüedad acumulada de cada empleado desde que comenzó a trabajar para la empresa.

Coincidimos con la interpretación de la Guía que reconoce la intención legislativa de proteger el acrecentamiento en el valor del empleado que progresa y permanece en su lugar de trabajo. Tal interpretación es cónsona con lo dispuesto en el Artículo 1 de la Ley Núm. 80, el cual dispone que "[l]os años de servicio se determinarán sobre la base de todos los períodos de trabajo anteriores acumulados que el empleado haya trabajado para el patrono antes de su cesantía". 29 L.P.R.A. sec. 185a. A su vez, es afín con los valores subyacentes de la Ley Núm. 80 de promover la estabilidad del empleado en su empleo a no ser que medie justa causa para su despido. *Véase* Historial Legislativo del P. del S. 1112, que se convirtió en la Ley Núm. 80 de 30 de mayo de 1976, Diario de Sesiones de la Asamblea Legislativa, 24 de mayo de 1975; *véase además* Ruy Delgado Zayas, *Apuntes para el estudio de: La Legislación Protectora del Trabajo* 162 (1988 rev. 2007). Interpretar lo contrario nos conduciría a un resultado injusto y absurdo contra aquel empleado que a lo largo de

---

[15] Así también se ha reconocido por practicantes y académicos del Derecho Laboral en Puerto Rico. *Véase* Alberto Acevedo Colom, *Legislación Protectora del Trabajo Comentada*, 5 (8va ed. 2005); Charles Zeno Santiago, *El despido y la política social en nuestro estado de derecho*, 34 Rev. Jur. U.I.P.R. 213, 225 (2000).

los años ha sido ejemplo de lealtad, superación y perseverancia.

**B**

El Artículo 3 de la Ley Núm. 80, además, establece ciertos elementos adicionales que deben cumplir aquellas empresas que tienen más de un establecimiento en Puerto Rico al determinar el orden de retención de empleados por antigüedad. Ello a raíz de que de que durante los primeros diez (10) años desde la aprobación de la Ley Núm. 80 existió una laguna jurídica respecto al orden de retención de empleados por antigüedad en empresas que tenían más de un establecimiento para hacer negocios en Puerto Rico. En ese entonces, la Ley guardaba silencio sobre si, al realizar una reducción de personal en uno de los establecimientos de la empresa, el orden de retención de empleados por antigüedad se tenía que realizar a base de todos los empleados de la empresa o sólo a base de los empleados que laboraban en el establecimiento en que se iba a efectuar la reducción de personal. Por varios años el Departamento del Trabajo y Recursos Humanos interpretó que en las reducciones de personal de una empresa que tenía varios establecimientos, debía establecerse el orden de retención de empleados por antigüedad a base de todos los empleados de los distintos establecimientos de la empresa en Puerto Rico. *Véase* Informe de la Comisión de Trabajo y Asuntos del Veterano a la Cámara de Representantes sobre el Sustitutivo del P. del S. 908 de 30 de mayo de 1986.

Al hacer tal interpretación, el Departamento del Trabajo y Recursos Humanos pretendía evitar que, por ejemplo, una empresa con varios establecimientos trasladara a empleados que deseaba cesantear a establecimientos en los que iba a haber reducciones de personal. *Id*. pág. 2. Por tanto, bajo la interpretación hasta entonces prevaleciente, en las reducciones de personal los empleados de más antigüedad en la empresa siempre desplazaban a empleados de menor antigüedad, sin importar la distancia o la relación entre los distintos establecimientos de la empresa. Al cabo de un tiempo, sin embargo, el Departamento del Trabajo y Recursos Humanos modificó su interpretación debido al efecto que tenía en los empleados de un establecimiento que no tenían relación alguna con el establecimiento objeto de una reducción de personal. *Id.* págs. 2-3.

A tales fines, mediante la Ley Núm. 146 de 18 de julio de 1986, 20 L.P.R.A. sec. 185c ("enmienda"), se enmendó la Ley Núm. 80 para añadir dos (2) incisos al Artículo 3 de la Ley, dirigidos precisamente a aclarar el proceso de orden de retención de empleados por antigüedad en empresas que tienen más de una oficina, fábrica, sucursal o planta ("establecimiento").[16] Mediante la enmienda, el legislador pretendió limitar las circunstancias en las que un empleado

---

[16]La Asamblea Legislativa acogió la interpretación que había ido hilvanando el Departamento del Trabajo y Recursos Humanos sobre el orden de retención de empleados por antigüedad en empresas con más de una oficina, fábrica, sucursal o planta. *Véase* Informe de la Comisión del Trabajo al Senado sobre el Sustitutivo del P. del S. 908 de 21 de mayo de 1986.

de una empresa que tiene varios establecimientos en Puerto Rico se vea afectado por reducciones de personal en establecimientos de la empresa con los cuales el empleado no haya tenido relación alguna. *Véase* Informe de la Comisión del Trabajo al Senado sobre el Sustitutivo del P. del S. 908 de 21 de mayo de 1986. Ello sin dejar de proteger el derecho de retención preferente por antigüedad de empleados que laboran en empresas en las que sus distintos establecimientos sí mantienen vínculos empresariales estrechos. En ese balance de intereses, se dispuso lo siguiente:

(a) En el caso de despidos o reducciones de personal por las razones contempladas en los incisos (d), (e) y (f) de la sec. 185b de este título **en empresas que tienen varias oficinas, fábricas, sucursales o plantas, y en las que la práctica es que usual y regularmente los empleados de una oficina, fábrica, sucursal o planta no se trasladan a otra, y que dichas unidades operan sustancialmente de forma independiente en cuanto a los aspectos de personal, la antigüedad de los empleados dentro de la clasificación ocupacional objeto de la reducción de personal, se computará tomando en cuenta únicamente los empleados en la oficina, fábrica, sucursal o planta en la cual se va a hacer dicha reducción de personal.**

(b) En el caso de empresas con varias oficinas, fábricas, sucursales o plantas en las cuales existe la práctica usual y regular de que sus empleados se trasladan de una unidad a otra y que las distintas unidades operan de forma sustancialmente integrada en cuanto a los aspectos de personal, la antigüedad se computará a base de todos los empleados de la empresa, o sea, tomando en consideración todas sus oficinas, fábricas, sucursales o plantas, que están en la clasificación ocupacional objeto de la reducción de personal.
20 L.P.R.A. sec. 185c (énfasis nuestro).

A tenor con lo anterior, y en lo pertinente a la controversia ante nuestra consideración, para que una empresa que tiene varios establecimientos compute la

antigüedad de empleados únicamente entre aquellos empleados que trabajan en el establecimiento en el que se efectuará una reducción de personal, debe establecer que no existen traslados frecuentes de empleados entre sus establecimientos. [17] Además, debe demostrar que sus establecimientos operan de forma independiente en cuanto a los aspectos de personal, entiéndase, principalmente, en el reclutamiento, despido y retención de empleados. [18] De esta forma, el legislador limitó las circunstancias en que, para efectos de establecer el orden de retención de empleados por antigüedad, se tenga que considerar a todos los empleados de los distintos establecimientos de la empresa en la clasificación ocupacional en que se llevará a cabo una reducción de personal. Esto sin afectar el derecho de retención preferente por antigüedad de aquellos empleados que laboran en empresas entre cuyos distintos establecimientos en Puerto Rico se realizan traslados frecuentes o que operan de forma sustancialmente integrada en cuanto a los aspectos de personal.

---

[17] Adviértase que traslados aislados, inusuales o irregulares no serán suficientes para concluir que los establecimientos de una empresa operan de forma integrada. Este análisis, sin embargo, amerita que se adecúe a las particularidades de la clasificación ocupacional del empleado cesanteado y conforme a las circunstancias de cada controversia.

[18] Para propósitos de la Ley, "[e]l término 'aspectos de personal'. . . se refiere principalmente a la fase de reclutamiento, despido y retención de personal y no necesariamente se refiere a la cuestión de preparación de nóminas y beneficios marginales". Informe de la Comisión de Trabajo y Asuntos del Veterano a la Cámara de Representantes sobre el Sustitutivo del P. del S. 908 de 30 de mayo de 1986, pág. 3.

**IV**

Discutida la normativa aplicable, pasemos a resolver la controversia ante nuestra consideración.

En este caso, el señor Del Carmen Tave comenzó a trabajar en Eaton el 24 de mayo de 1994, siete (7) años antes que la señora Sánchez Reyes, quien comenzó a trabajar en Eaton el 16 de abril de 2001. Sin embargo, el señor Del Carmen Tave comenzó a trabajar en la clasificación ocupacional grupo de *Staff* después que la señora Reyes Sánchez. A base de estos hechos, el foro apelativo intermedio determinó que procedía resolver mediante sentencia sumaria a favor de la señora Reyes Sánchez por entender que Eaton no cumplió con el orden de retención de empleados por antigüedad que establece el Artículo 3 de la Ley Núm. 80. El foro apelativo intermedio estimó que, en virtud del Artículo 3 de la Ley, la señora Reyes Sánchez tenía mayor antigüedad que el señor Del Carmen Tave al haber trabajado por más tiempo en la clasificación ocupacional grupo de *Staff* y, por ende, su despido fue injustificado. No tiene razón.

Conforme a las disposiciones del Artículo 3 de la Ley Núm. 80 y la interpretación que establece la Guía que hoy adoptamos, la antigüedad de un empleado debe calcularse sumando la totalidad del tiempo que éste ha trabajado en la empresa, independientemente del movimiento del empleado en distintas clasificaciones ocupacionales. Por tal razón, a pesar de que el señor Del Carmen Tave había trabajado por

menos tiempo en el puesto de grupo de *Staff* que la señora Reyes Sánchez, éste había trabajado más tiempo en la empresa. Por consiguiente, el señor Del Carmen Tave tenía más antigüedad en el empleo que la señora Reyes Sánchez. Actuó correctamente la empresa al determinar que el señor Del Carmen Tave tenía más antigüedad que la señora Reyes Sánchez en la clasificación ocupacional grupo de *Staff*. Resuelto lo anterior, resta por determinar si existen hechos esenciales en controversia que impidan la resolución de este caso por la vía sumaria.

Según surge del expediente de este caso, Eaton es una empresa a nivel internacional que tiene varios establecimientos en Puerto Rico. Por ende, debe probar, además, que ha cumplido con las disposiciones del Artículo 3 de la Ley Núm. 80 relativas a aquellas empresas con más de un establecimiento.[19] A tales efectos, en la solicitud de sentencias sumaria, Eaton sostuvo que no realiza traslados y que sus plantas operan sustancialmente de forma independiente en cuanto a los aspectos de personal. Apéndice de la petición de *certiorari*, págs. 94-95. Por consiguiente, sostuvo que cumplió con el orden de retención de empleados por antigüedad al computar la antigüedad entre los empleados en la clasificación ocupacional grupo de *Staff* en la planta de Eaton en Las Piedras y determinar que

---

[19] Esto es afín con el Artículo 11 de la Ley Núm. 80, 29 L.P.R.A. sec. 185k, que exige que en toda reclamación entablada por un empleado al amparo de esta Ley, el patrono viene obligado a probar que el despido fue justificado.

la señora Reyes Sánchez era la empleada con menor antigüedad. *Id.*

En la moción en oposición a la solicitud de sentencia sumaria, la señora Reyes Sánchez, además de sostener que para efectos de establecer el orden de retención de empleados por antigüedad el señor Del Carmen Tave tenía menos antigüedad que ésta, sostuvo que Eaton tenía la práctica usual y regular de trasladar a sus empleados de una planta a otra, y que operaba de forma sustancialmente integrada en cuanto a los aspectos de personal. Apéndice de la petición de *certiorari*, págs. 154, 164-165. Por ende, arguyó que Eaton debió establecer un orden de retención de empleados por antigüedad a base de todas las plantas de la empresa. Para fundamentar tal alegación, la señora Reyes Sánchez alegó que bajo el programa "Power of One" de Eaton (Eaton Jobs), los empleados de las distintas plantas de Eaton podían competir para posiciones que se publicaran en cualquier planta de la empresa a nivel mundial. Además, mediante declaración jurada que acompañó a su solicitud en oposición a la sentencia sumaria, sostuvo que seis (6) empleados, incluyéndose, habían sido trasladados entre las distintas plantas de Eaton, cuatro (4) de los cuales habían sido trasladados de plantas de Eaton en otras jurisdicciones a Puerto Rico. [20] Apéndice de la petición de

_____

[20] Estos son: Zoraida Reyes Sánchez, de la planta de Eaton de Coamo a la planta de Eaton de Las Piedras; Eddy Del Carmen Tave, Kevin Pimentel y Jorge Tarafa, de la planta de Eaton de Haina, República Dominicana a la planta de Eaton de Las Piedras; Samuel Rivera, de la planta de Eaton de Haina, República Dominicana a la planta de Eaton de Coamo;

*certiorari*, pág. 169. Tales alegaciones son insuficientes para rebatir los hechos esenciales en controversia. Veamos.

En la solicitud de sentencia sumaria, Eaton sostuvo que como parte de una política interna de la empresa, tiene un programa llamado "Eaton Jobs" en el cual sus empleados pueden competir por vacantes o plazas en cualquier planta de Eaton a nivel mundial. Apéndice de la petición de *certiorari*, págs. 92-95. Según descrito, la empresa, a través de un sistema electrónico, publica oportunidades de empleo para sus empleados en las distintas plantas de la empresa en el plano internacional, incluyendo las plantas de Eaton en Puerto Rico. De esta manera, los empleados de Eaton, dentro de su prerrogativa e interés, pueden solicitar a las vacantes o plazas que se anuncian a través del sistema electrónico. Luego de evaluadas todas las solicitudes, la gerencia de la planta a la que el empleado solicitó, determina quién es el candidato a cubrir la plaza o vacante. Así las cosas, si bien bajo el programa "Eaton Jobs" distintos empleados de la empresa compiten por plazas o vacantes, la planta tiene la discreción y potestad de escoger, dentro de las solicitudes, al empleado de su predilección.

A tenor con las características antes descritas del programa "Eaton Jobs", entendemos que el movimiento de empleados a través del programa no constituye traslados para efectos del Artículo 3 de la Ley. La protección que

y Jeannette Tripory, de la planta de Eaton de Cabo Rojo a la planta de Eaton de Las Piedras.

quiso ofrecer el legislador no se extiende al movimiento de empleados que participan voluntariamente en un programa competitivo de solicitud de empleo como lo es "Eaton Jobs". Por lo tanto, es insuficiente la alegación presentada por la señora Reyes Sánchez de que la empresa realizaba traslados frecuentes bajo el programa "Eaton Jobs" para establecer hechos esenciales en controversia. Pasemos entonces a considerar los seis (6) traslados específicos que alegó la señora Reyes Sánchez.

Según surge de los hechos de este caso, el movimiento de la señora Reyes Sánchez de la planta de Coamo a la planta de Las Piedras fue a través del programa "Eaton Jobs". Por tanto, según establecimos, el movimiento de la señora Reyes Sánchez no se considera un traslado para efectos del Artículo 3 de la Ley. En cuanto a los traslados alegados que provenían de establecimientos en otras jurisdicciones, entendemos que el Artículo 3 de la Ley no requiere que se realice un análisis del movimiento de personal entre establecimientos de la empresa a nivel internacional. Tal análisis se limita a determinar la frecuencia de traslados de empleados entre los establecimientos de la empresa en la jurisdicción de Puerto Rico.

En consecuencia, no se consideran traslados, para propósitos de establecer la frecuencia de traslados entre establecimientos de la empresa en Puerto Rico, el movimiento de personal o traslados provenientes de plantas

de Eaton en otras jurisdicciones.[21] Así las cosas, sólo uno (1) de los traslados entre plantas de Eaton en Puerto Rico que alegó la señora Reyes Sánchez podría considerarse como un traslado para efectos de la Ley.[22] Ello no es suficiente para controvertir el hecho de que Eaton no efectuaba traslados **frecuentes** de empleados entre sus plantas en Puerto Rico.

Finalmente, según discutimos, Eaton detalló que sus plantas operan independientemente en cuanto a los aspectos de personal. Por ende, alegar que por razón del programa "Power of One" (Eaton Jobs) las distintas plantas de Eaton operan de forma sustancialmente integrada en cuanto a los aspectos de personal, es insuficiente para controvertir el hecho de que las distintas plantas de Eaton operaban sustancialmente de forma independiente en cuanto a los aspectos de personal. En esta etapa de los procedimientos, habiendo concluido el descubrimiento de prueba, la señora Reyes Sánchez debió presentar aquella prueba que controvirtiera sustancialmente los hechos alegados por la empresa. En cambio, descansó en las alegaciones en su demanda y se limitó a reproducir sus alegaciones en una declaración jurada que acompañó a su escrito en oposición a que se dictara sentencia sumaria.

---

[21] Los traslados de Eddy Del Carmen Tave, Kevin Pimentel y Jorge Tarafa, de la planta de Eaton de Haina, República Dominicana a la planta de Eaton de Las Piedras, y el traslado de Samuel Rivera, de la planta de Eaton de Haina, República Dominicana a la planta de Eaton de Coamo.

[22] El traslado de Jeannette Tripory de la planta de Eaton de Cabo Rojo a la planta de Eaton de Las Piedras.

Por tal razón, somos del criterio que no existe razón que impida la disposición sumaria de la reclamación de despido injustificado. Eaton presentó prueba de haber cumplido con el orden de retención de empleados por antigüedad que establece el Artículo 3 y con las demás disposiciones de la Ley Núm. 80. Tales alegaciones no fueron controvertidas. Al no existir controversia de hechos esenciales en cuanto a la reclamación de despido injustificado, procedía dictar sentencia sumaria, como cuestión de derecho, desestimando la reclamación de despido injustificado

### V

Conforme a lo anterior, resolvemos que, según las disposiciones de la Ley Núm. 80, la antigüedad de un empleado debe calcularse sumando la totalidad del tiempo que ha trabajado en la empresa, independientemente del movimiento del empleado en distintas clasificaciones ocupacionales. Al no existir hechos esenciales en controversia, procede dictar sentencia sumaria y desestimar la reclamación de despido injustificado. Se revoca la sentencia del Tribunal de Apelaciones que sostuvo lo resuelto por el Tribunal de Primera Instancia.

Se dictará Sentencia de conformidad.

Anabelle Rodríguez Rodríguez
Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Zoraida Reyes Sánchez

    Recurrida

        v.                          CC-2011-0191

Eaton Electrical H/N/C
Eaton Electrical Las Piedras;
Fulana de Tal

    Peticionarios

SENTENCIA

San Juan, Puerto Rico, a 7 de octubre de 2013

Por los fundamentos expuestos en la Opinión que antecede, los cuales se incorporan íntegramente a la presente, se dicta Sentencia y resolvemos que, según las disposiciones de la Ley Núm. 80, la antigüedad de un empleado debe calcularse sumando la totalidad del tiempo que ha trabajado en la empresa, independientemente del movimiento del empleado en distintas clasificaciones ocupacionales. Al no existir hechos esenciales en controversia, procede dictar sentencia sumaria y desestimar la reclamación de despido injustificado. Se revoca la sentencia del Tribunal de Apelaciones que sostuvo lo resuelto por el Tribunal de Primera Instancia.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Jueza Asociada señora Pabón Charneco y el Juez Asociado señor Rivera García concurren con el resultado sin opinión escrita.

                             Aida Ileana Oquendo Graulau
                          Secretaria del Tribunal Supremo